IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ST. JOHN'S UNITED CHURCH OF
CHRIST and DEVIN CLARY,

　　　　Plaintiffs,

v.                                                                    Case No. 3:25-CV-1022-NJR

STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY and JOHN
DOE,

　　　　Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a motion to dismiss filed by defendant State Auto

Property & Casualty Insurance Company ("State Auto"). Separately, the Court ordered State

Auto to show cause why the case should not be remanded to state court for want of

jurisdiction. For the following reasons, the order to show cause is dismissed and the motion

to dismiss is granted in part and denied in part.

### BACKGROUND

On March 27, 2024, St. John's United Church of Christ ("St. John's UCC") and Devin

Clary (collectively, "Plaintiffs") filed a lawsuit in the Circuit Court of Washington County,

Illinois, alleging claims against their insurer, State Auto, for breach of contract, statutory

vexatious refusal to pay, and common law bad faith related to State Auto's refusal to pay for

damages that St. John's UCC sustained from high winds on July 1, 2023. (Doc. 1-1). They

allege that State Auto violated its duties under the insurance contract by, among other things,

failing to timely or diligently investigate Plaintiffs' claim, applying reimbursement principles

Page 1 of 16

contrary to the contract, requiring Plaintiffs to pay covered expenses, and failing to consult local contractors for cost estimates. (Compl. ¶ 10). They aver State Auto only offered to resolve the claim for 20 percent of its own estimate of the cost of repairs. (*Id.*).

Plaintiffs also bring several claims for fraud and bad faith refusal to pay against a John Doe defendant who they allege is a citizen of Illinois and one of State Auto's claims adjusters. (*Id.* ¶¶ 5-6, 17). According to Plaintiffs, the John Doe defendant intentionally undervalued the claim, fabricated reasons for not paying, and misrepresented the scope of the insurance policy when issuing it. (*Id.* at ¶¶ 17, 26, 34-36).

State Auto removed the case to this district court on May 21, 2025. (Doc. 1). On June 11, 2025, Plaintiffs filed a motion to remand, arguing that State Auto's Notice of Removal was untimely filed. (Doc. 9). The Court denied the motion on October 21, 2025. (Doc. 13).

State Auto also moved to dismiss Plaintiffs' claims under Rule 12(b)(6). (Doc. 11). While that motion was pending, the Court ordered State Auto to show cause why the action should not be remanded to state court. (Doc. 16). The Court observed that Plaintiffs had alleged the John Doe defendant was a citizen of Illinois, which would make the parties non-diverse form one another and deprive the Court of jurisdiction to adjudicate the claims.

State Auto responded to the show cause order on February 23, 2026. (Doc. 17). It represents that Plaintiffs confirmed in an email that the John Doe defendant was the claims adjuster assigned to process Plaintiffs' claim. (*Id.* at p. 2). State Auto avers that only two of its employees—Ari Schlossberg and Aaron Rundberg—ever worked on Plaintiffs' insurance claim. (Doc. 17-2). Mr. Rundberg furnished a declaration attesting that he is a domiciliary and citizen of Kansas, and Mr. Schlossberg is a domiciliary and resident of South Carolina. (*Id.*). Plaintiffs did not file a response.

**DISCUSSION**

## I. Jurisdiction

As the Court explained in its Show Cause Order, Plaintiffs' allegation that the John Doe defendant is a citizen of Illinois raises jurisdictional concerns. Under 28 U.S.C. § 1332, a federal district court has original subject matter jurisdiction over civil actions involving complete diversity between the parties plus an amount in controversy exceeding $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). Complete diversity means that "no defendant may share the same state citizenship as any plaintiff." *Big Shoulders Capital LLC v. San Luis & Rio Grande Railroad, Inc.*, 13 F.4th 560, 571 (7th Cir. 2021). Both Plaintiffs are citizens of Illinois. (Compl. ¶¶ 1-2). If the John Doe defendant also is a citizen of Illinois, the parties would not be diverse from one another.

It is true that the removal statute provides that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) . . ., the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). But in that context, a defendant with a fictitious name "is an *unknown* potential party to the lawsuit." *Melock v. Scottsdale Ins. Co.*, No. 25-8105, 2025 WL 3771386, at *3 (N.D. Ill. Dec. 31, 2025). In contrast, "when a plaintiff's allegations 'give a definite clue about the identity of a fictitious defendant by specifically referring to an individual who acted as a company's agent, the court should consider the citizenship of the fictitious defendant.'" *Likens v. Menard, Inc.*, No. 15-2959, 2015 WL 3961635, at *2 (N.D. Ill. June 26, 2015) (quoting *Tompkins v. Lowe's Home Ctr., Inc.*, 847 F. Supp. 462, 464 (E.D. La. 1994)).

A close reading of the complaint makes clear that the John Doe defendant described

Page 3 of 16

therein is not a mere placeholder for future additions to the lawsuit. He is clearly identified as the individual who transacted with Plaintiffs on behalf of State Auto. (Compl. ¶ 6). His citizenship therefore is relevant to the Court's jurisdiction.

As the proponent of federal jurisdiction, State Auto bears the burden of establishing jurisdiction is proper. *LM Ins. Corp.*, 533 F.3d at 547; *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). The Court is satisfied that State Auto has met its burden. Its evidence consisted of correspondence from Plaintiffs' counsel confirming that the John Doe defendant was the claims adjuster assigned to the case. (Doc. 17-1). It also put forward a declaration from Aaron Rundberg, the present adjuster, who stated that only he and one other employee, Ari Schlossberg, had been assigned to the claim. (Doc. 17-2). Mr. Rundberg declares that he is a domiciliary and citizen of Kansas, and, on review of Mr. Schlossberg's employment records, determined that he is a citizen of South Carolina. (*Id.*). Plaintiffs did not file a response contesting this evidence or the conclusion that the John Doe defendant is *not* an Illinois citizen. The Court therefore will dismiss the show cause order and direct Plaintiffs to file an amended complaint naming the John Doe defendant. Failure to do so will result in the dismissal of the claims against that individual under Rule 4(m).

## II. Merits

Having concluded that the Court has subject matter jurisdiction, the Court turns to the merits of State Auto's motion to dismiss.

A motion to dismiss may be granted in instances where the plaintiff's complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a plaintiff to survive a motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To be plausible, an allegation must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations stated in the complaint will be taken as true and interpreted in "the light most favorable" to the plaintiff. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678. This standard does not require "detailed factual allegations." *Bell Atl. Corp.*, 550 U.S. at 555. Rather, it simply requires that the plaintiff gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### a. Breach of Contract (Count I)

State Auto first takes aim at Plaintiffs' breach of contract claim. It asserts that by electing to invoke the appraisal process set out in the insurance policy, Plaintiffs are foreclosed from litigating under a breach of contract theory. State Auto included a copy of the insurance policy with its motion, which may be considered on a motion to dismiss even though it was not attached to Plaintiffs' complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (noting that a court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

State Auto points to the insurance policy's appraisal provision, which provides:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the

Page 5 of 16

value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

     a. Pay its chosen appraiser; and
     b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 11-1, p. 70). According to State Auto, courts have held that similar provisions bar policyholders from bringing suit in the event they enter the appraisal process, which Plaintiffs admit is ongoing here.

Plaintiffs push back that their breach of contract claim is not based on the appraisal process inasmuch as it focuses on State Auto's failure to pay the covered loss within a reasonable time and for a reasonable amount. The appraisal process, they say, is for settling disputes about the amount payable under the policy, but the breach of the insurance policy they allege here is State Auto's refusal to pay the full, covered amount. They add that a breach of contract claim is necessary to obtain pre-judgment interest and attorney's fees. In the alternative, they propose that the Court stay the breach of contract claim to permit them to enforce the appraiser's decision, if necessary. In its reply brief, State Auto avers that it has made payment on the loss and that it did so within the period required by the policy.

The parties' briefs both refer to events that occurred *after* the start of this litigation, such as the progress of the appraisal. Plaintiffs' complaint apparently was filed *before* the parties engaged in that process, and it is not mentioned in the pleadings. Although the Court may consider the insurance policy on a motion to dismiss, the Court feels constrained to ignore any subsequent factual developments outside of the complaint for purposes of deciding the motion.

"The required elements of a breach of contract claim in Illinois are the standard ones of common law: '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (quoting *Association Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)). Insurance policies are assessed using ordinary principles of contract interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005); *see also Old Guard Ins. Co. v. Riverway Prop. Mgmt., LLC*, No. 23-01098, 2024 WL 4112781, at *4 (C.D. Ill. Sept. 6, 2024) (citing *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015)). A court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564 (citing *American States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997)).

Insurance policies often contain appraisal provisions. Appraisal is an informal dispute-resolution process, "most often used to determine the amount of the loss sustained under a property insurance policy." *FTI Int'l, Inc. v. Cincinnati Ins. Co.*, 339 Ill. App. 3d 258, 260, 790 N.E.2d 908, 910 (2003) (quoting 15 Couch on Insurance 3d § 209:4 (1999)). The public policy of Illinois favors the resolution of disputes through these informal mechanisms. *Id.* at 261, 790 N.E.2d at 911. Under Illinois law, an appraisal clause is akin to an arbitration clause and is similarly enforceable by a court. *Lundy v. Farmers Grp. Inc.*, 322 Ill. App. 3d 214, 218, 750 N.E.2d 314, 318 (Ill. App. Ct. 2001). But to compel appraisal, the parties' dispute must be within the covered scope of the insurance policy's appraisal provision. *Id.*; *see also 70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16-07723, 2016 WL 6582583, at *4 (N.D. Ill. Nov. 7, 2016) ("Illinois courts only compel compliance with or order enforcement of an appraisal when the

Page 7 of 16

language of the appraisal clause is clear and unambiguous, and when it is obvious that the disputed issue falls within the scope of the clause."). After the appraisal is concluded, Illinois recognizes a limited role for courts to review a determination where "a gross mistake of fact or law is 'apparent on the face' of the award," *Cabinet Distribution Ctr. LLC v. SECURA Ins. Co.*, No. 24-673, 2024 WL 3950318, at *3 (N.D. Ill. Aug. 26, 2024), or if the award was affected by fraud or misconduct, *Aksharbrahma Corp. v. Nautilus Ins. Co.*, No. 22-04140, 2025 WL 3090024, at *6 (C.D. Ill. Nov. 5, 2025) (citing *Hetherington v. Cont'l Ins. Co. of N.Y.*, 311 Ill.App. 577, 37 N.E.2d 366, 368 (1941)).

State Auto maintains the appraisal provision here "unambiguously waives the policyholder's right to bring suit in the event that they enter appraisal." (Doc. 11, p. 5). That is not an accurate account of the provision or of appraisals generally.

To start, an insured's right to sue and its obligations under an appraisal provision are generally understood to be separate matters. *See Courtyards at Prairie Fields Condo. Ass'n* v. *W. Bend Mut. Ins. Co.*, No. 22- 4854, 2023 WL 6198818, at *3 (N.D. Ill. Sept. 22, 2023); *Cabinet Distribution Ctr. LLC v. SECURA Ins. Co.*, No. 24-673, 2024 WL 3950318, at *6 (N.D. Ill. Aug. 26, 2024). That is because the court and an appraiser have separate roles. The insurance policy may delegate to the appraiser the task of assessing and valuing damages, but underlying questions of contract interpretation remain for the court. *Mouw v. Shelter Mut. Ins. Co.*, No. 22-2306, 2024 WL 707231, at *2 (N.D. Ill. Feb. 21, 2024) (citing *FTI Int'l, Inc.*, 339 Ill. App. 3d at 260, 790 N.E.2d at 910); *Zhao v. State Farm Fire & Cas. Co.*, 2025 IL App (2d) 240723, ¶ 34, 266 N.E.3d 1229, 1238 (Ill. App. Ct. 2025). Therefore, if a party invokes an appraisal process, the Court must make a threshold determination of whether the plaintiff's claim requires interpreting the insurance policy or is an issue of valuing a loss, which generally falls in the

heartland of typical appraisal provisions. As one court put it, "[t]he key question on which the appraiser-versus-court determination depends is whether the claim at issue turns on the interpretation of the insurance contract or a law or regulation, not an assessment of the loss, in which case the dispute would be a question of law for the court." *Norman v. Standard Fire Ins. Co.*, No. 22-2199, 2023 WL 6018919, at *6 (C.D. Ill. May 15, 2023).

Here, the insurance policy provides that disagreements about the "value of the property or the amount of loss" are subject to the appraisal process and says that the appraiser's decision "will be binding." (Doc. 11-1, p. 70). Courts have held that where parties agree to a *binding* determination by the appraiser, they may not litigate the amount owed under the policy in court. *See 70th Ct. Condo Ass'n*, 2016 WL 6582583, at *4; *Courtyards at Prairie Fields Condo. Ass'n*, 2023 WL 6198818, at *3. Thus, to the extent Plaintiffs challenge the amount of State Auto's payment, those issues first must be addressed through the appraisal process.[1]

But as set out in the complaint, Plaintiffs' breach of contract claim presents something of a mixed bag. Plaintiffs allege that State Auto breached its obligations under the insurance policy in several respects:

a) It failed to diligently investigate and pay Plaintiffs' claims for wind loss;
b) It failed to take appropriate measures to protect and preserve the property interests of Plaintiffs;
c) It applied reimbursement principles that ran contrary to Plaintiffs' policy requirements;
d) It required Plaintiffs to pay expenses that were covered expenses;
e) It failed to timely evaluate the extent of Plaintiffs' wind loss;
f) It breached its agreement with Plaintiffs to pay loss expenses and replacement cost of items that were covered by the policy issued by Defendant to Plaintiffs;
g) State Auto's attempt to provide partial benefits estops Defendant State Auto's obligation to cover Plaintiffs' loss, and further, Defendant failed to file

---

[1] To be sure, an insurer may waive its right to an appraisal, *see Lundy*, 322 Ill. App. 3d at 220, 750 N.E.2d at 319, but Plaintiffs do not develop an argument that State Auto waived its rights under the policy's appraisal clause.

a declaratory judgment to determine its obligations under the policy;

h) John Doe's objections to payment were specious and contrary to policy obligations;

h) Defendants failed to consult local contractors and used estimated cost figures that were so far below market rate that no reasonably competent contractor could or would perform the scope of the work required to make the necessary repairs;

i) Defendants misrepresented to Plaintiffs the events that were covered when selling the policy;

j) On account of Defendants' delays in assessing and handling this claim, Plaintiffs' church has sustained a substantial loss, and Defendants owe payment for the entirety of the damage to Plaintiffs' multiple structures, but has refused to make the payments it owes Plaintiffs by the terms of the insurance contract;

k) Defendants offer of payment was only 20% of its own self-serving estimate of the cost of repairs; and

l) Subjected Plaintiffs to additional expenses for loss of use, costs, and attorney's fees due to the breach of contract.

(Compl. ¶ 10). In their response to State Auto's motion to dismiss, Plaintiffs clarify that their breach of contract claim "centers on State Auto's failure to pay the covered loss within a reasonable time and for a reasonable amount, a failure that commenced with the lowball offer and continues to the present by not paying the Umpire's award, and offering yet another lowball, take-it-or leave it offer." (Doc. 14, p. 8).

The Court observes that despite the complaint's verbosity about State Auto's alleged misdeeds, the basis for many of the allegations is quite unclear. For instance, Plaintiffs do not allege when they first submitted notice to State Auto of the damage to their facility. That aside, to the extent Plaintiffs' allegations concern the *amount* of loss, State Auto is entitled to have that dispute adjudicated first through the appraisal process. But to the extent Plaintiffs claim that State Auto breached the contract by *untimely* investigating and/or paying the claim, that issue is not subject to appraisal and properly may be litigated here. *See Norman*, 2023 WL 6018919 at *6. The Court therefore will deny State Auto's motion to dismiss the

Page 10 of 16

breach of contract claim. But in light of the parties' representations that an appraisal now has occurred, the Court will direct Plaintiffs to file an amended complaint setting out their current theory of liability.

### b. Statutory Bad Faith Refusal to Pay (Count II)

Next, State Auto argues that Plaintiffs' claim for vexatious refusal to pay under 215 Ill. Comp. Stat. § 5/155 must be dismissed because that provision does not create a separate cause of action but merely an additional state-law remedy. It adds that if Plaintiffs cannot prevail on a breach of contract claim, there is no basis for relief under Section 155. Plaintiffs respond that courts regularly permit Section 155 claims to proceed as stand-alone counts and that their allegations regarding State Auto's delays in settling the insurance claim and its "lowball" offers are sufficient to state a claim.

"As described by the Supreme Court of Illinois, Section 155 provides [] 'an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996)); *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 579 (7th Cir. 2021). In other words, "section 155 supplements the remedies otherwise available in an action for breach of contract." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 519 (7th Cir. 2025). The statute essentially is a fee-shifting provision that "rewards a prevailing party for successful litigation against a vexatious insurance defendant." *Moles v. Illinois Farmers Ins. Co.*, 2023 IL App (1st) 220853, ¶ 24, 229 N.E.3d 856, 863 (Ill. App. Ct. 2023). It applies "where one of three issues remains undecided: [1] the liability of the insurer, [2] the amount owed under the policy, or [3] whether a delay in settling a claim has been unreasonable." *Creation Supply*, 995 F.3d at

579 (quoting *Neiman v. Econ. Preferred Ins. Co.*, 357 Ill. App. 3d 786, 794, 829 N.E.2d 907, 914 (2005)).

An insurer's conduct is not vexatious where there exists a bona fide dispute over the extent of coverage. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *Dominick's Finer Foods v. Indiana Ins. Co.*, 2018 IL App (1st) 161864, ¶ 94, 102 N.E.3d 692, 709 (Ill. App. Ct. 2018). "Whether an insurer acted unreasonably or vexatiously presents an issue of fact" that requires "courts to consider the totality of circumstances." *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) (citations omitted).

State Auto's argument that the Section 155 claim must be dismissed because it is not a cause of action is not persuasive. It is true that Section 155 is not a cause of action, but the Seventh Circuit has recognized that Section 155 claims "often *accompany* breach-of-contract claims." *Creation Supply*, 995 F.3d at 582 (emphasis added). Because the Court concluded above that Plaintiffs' appear to have pleaded a breach of contract claim independent of the appraisal process and afforded Plaintiffs an opportunity to amend their complaint, the issue of whether a Section 155 claim is viable on its own is immaterial. *Cf. Moles*, 2023 IL App (1st) 220853 at ¶¶ 27-28, 229 N.E.3d at 864 (holding that plaintiffs cannot bring a stand-alone section 155 claim). Although as a matter of formality, it might have been more appropriate for Plaintiffs to characterize the Section 155 claim as a request for relief rather than a separate count, State Auto has not identified any authority dictating that the manner of pleading here was improper. Arguably, pleading the claim as a separate count makes review of the legal sufficiency of the supporting allegations more efficient.

To that end, State Auto's second argument contends Plaintiffs' allegations of bad faith

or vexatious conduct are legally insufficient. (Doc. 15, pp. 4-5). It is well-established that "[c]onclusory allegations that an insurer acted vexatiously or unreasonably, 'without some modicum of factual support,' are insufficient to state a plausible claim for relief under section 155." *Bao v. MemberSelect Ins. Co.*, No. 21-04119, 2022 WL 1211509, at *3 (N.D. Ill. Apr. 25, 2022) (quoting *Scottsdale Ins. Co. v. City of Waukegan*, No. 07-64, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007)); *see also Call One Inc. v. Berkley Ins. Co.*, 587 F. Supp. 3d 706, 720 (N.D. Ill. 2022) ("Simply pleading that the insurer knowingly and intentionally refused to provide insurance coverage and that the insurer's refusal was and continues to be vexatious and unreasonable, without some modicum of factual support, is insufficient to plausibly suggest that the insured is entitled to relief under the statute."). Appending the label "vexatiously and unreasonably" to allegations constituting a breach of contract likewise is not enough to survive a motion to dismiss. *Meade, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 20-05293, 2023 WL 3058781, at *2 (N.D. Ill. Apr. 23, 2023).

As was the case for the breach of contract claim, the complaint describes State Auto's vexatious conduct only at a high level of generality. Notably, Plaintiffs allege that State Auto "intentionally declined to pay Plaintiffs what was owed under the policy, unreasonably delayed the claim, and did so under such circumstances that are vexatious and unreasonable." (Compl. ¶ 14). This statement is a threadbare recital of the elements of a claim and fails to shed light on the circumstances plausibly supporting an inference that State Auto is liable under Section 155. *See Ashcroft*, 556 U.S. at 678. Generously construed, however, other portions of the complaint could be read to suggest Plaintiffs' grievance is that State Auto (1) dithered in settling the insurance claim and (2) undertook certain unfair practices in the dispute, such as offering only 20% of its own estimate of the cost of repairs. (Compl. ¶ 10(a),

Page 13 of 16

(e), (h), (k)).

As for the first issue, the complaint does not set out a timeframe for the alleged delay. Courts have found the absence of these details dispositive. *See McGrew v. TravCo Ins. Co.*, No. 25-4538, 2026 WL 63083, at *3 (N.D. Ill. Jan. 8, 2026) (faulting a plaintiff for failing to provide dates when counsel attempted to contact the insurance company and when the insurer denied the claim); *Rasho v. MemberSelect Ins. Co.*, No. 24-3336, 2025 WL 45610, at *3 (N.D. Ill. Jan. 8, 2025) (similar). Here, Plaintiffs' failure to plead facts establishing the length of the alleged delay is problematic although not fatal in light of the Court's conclusion regarding Plaintiffs' other allegations of wrongdoing.

On the second issue, two allegations stand out: Plaintiffs say that State Auto "failed to consult local contractors and used estimated cost figures that were so far below market rate that no reasonably competent contractor could or would perform the scope of the work required to make the necessary repairs" and made an "offer of payment was only 20% of its own self-serving estimate of the cost of repairs." (Compl. ¶ 10(h), (k)).[2] More than unadorned allegations that State Auto breached the insurance policy in a vexatious manner, these are specific occurrences of potential misconduct. *Cf. Sieron v. Hanover Fire & Cas. Ins. Co.*, 485 F. Supp. 2d 954, 960 (S.D. Ill. 2007) (finding sufficient a plaintiff's allegations that an insurer's "unreasonable demand letter, refusal to negotiate, failure to investigate her claim properly,

---

[2] Plaintiffs' brief provides additional context about State Auto's purported wrongdoing:

> Defendant ignored its own repair estimate, offering approximately half the value of its own retained repair personnel, and Defendant's own appraiser's determination was approximately three times the value offered by the insurer, and only a fourth of the value determined by the Umpire. The insurer made no effort to resolve the claim after its lowball offer until years after Plaintiff hired a lawyer. This is the sine qua non of bad faith and vexatious refusal.

(Doc. 14, p. 12). Although the Court appreciates the additional factual detail, most of this information is not set out in the operative pleading and therefore cannot be considered in deciding the present motion.

and untimely claim resolution were all attempts to get her to walk away from her claim"); *see also Sutherland-Garnier Funeral Home, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 23-1501, 2023 WL 8715859, at *3 (S.D. Ill. Dec. 18, 2023) (denying motion to dismiss where plaintiff "albeit in a general fashion" pleaded facts regarding conduct it deemed vexatious). In fact, the allegations are markedly similar to those in a recent Northern District case, *Tower Crossing Condominium Association, Inc. v. Affiliated FM Insurance Co.* There, the court held that the plaintiff condominium association's Section 155 claim could proceed where the complaint accused the insurer of "low-balling" a settlement and unreasonably refusing to conduct certain repairs to the property. *See Tower Crossing Condo. Ass'n, Inc. v. Affiliated FM Ins. Co.*, No. 21-06228, 2023 WL 1069852, at *5 (N.D. Ill. Jan. 27, 2023). The allegations regarding State Auto's conduct are of a similar character.

Summing up, the Court is satisfied that Plaintiffs have pleaded enough factual material that, if accepted as true, states a claim under Section 155 by putting State Auto "on notice for precisely what behavior [they] allege[] constituted unreasonable and vexatious behavior." *2 Lemoyne Parkway Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. 23-2130, 2024 WL 22234, at *2 (N.D. Ill. Jan. 2, 2024). The Court therefore will deny State Auto's motion to dismiss this claim.

### c. Common Law Bad Faith Refusal to Pay (Count IV)

Finally, State Auto argues that Count IV, Plaintiffs' claim for bad faith refusal to pay under the common law, is preempted by Section 155 and is not recognized by Illinois courts in this context. Plaintiffs do not expressly respond to these arguments in their brief. Consequently, the Court finds that Plaintiffs have abandoned this claim and will dismiss it with prejudice. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (affirming a district

court's determination where the litigant "effectively abandon[ed] the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *see also Braun v. Vill. of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022).

### CONCLUSION

For these reasons, the Order to Show Cause (Doc. 16) is **DISMISSED**, and State Auto's motion to dismiss (Doc. 11) is **GRANTED in part** and **DENIED in part**. Count IV is **DISMISSED with prejudice**. The remainder of the motion is **DENIED**.

Plaintiffs **SHALL** file an amended complaint naming the John Doe defendant and bringing the factual allegations current **on or before March 25, 2026**.

**IT IS SO ORDERED.**

**DATED:   March 11, 2026**

_____

**NANCY J. ROSENSTENGEL**
**United States District Judge**